J-A35004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID RONALD RILEY, | |
| Appellant | No. 89 WDA 2015 |

Appeal from the Judgment of Sentence December 15, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001271-2014

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JANUARY 5, 2016**

Appellant, David Ronald Riley, appeals from the judgment of sentence of an aggregate term of 40 to 80 years' incarceration, imposed after he was convicted of various sexual offenses stemming from the abuse of his daughter, hereinafter "the victim."  Appellant raises several challenges to evidentiary rulings by the court during his cross-examination of the victim, and also challenges the legality of his mandatory minimum terms of incarceration.  After careful review, we affirm Appellant's convictions, but vacate his sentence and remand for resentencing.

At Appellant's trial, the victim testified that Appellant began abusing her in 2006 or 2007, when she was approximately eight or nine years old and Appellant was 40 years old.  Notes of Testimony (N.T.), 9/3/14, at 25, 27, 63.  She stated that when her mother was at work, he would lock her

two brothers in their room and then have sexual intercourse with her. *Id.* at 29-30. Appellant also "would insert his fingers into [her] vagina" and forced the victim to "put [her] mouth on his private part" until he ejaculated. *Id.* at 31. The victim could not recall how many times she was abused by Appellant, but stated that it occurred more than once. *Id.* at 32. She also testified that she told Appellant to stop, but he refused. *Id.* at 30. The victim did not tell anyone about the abuse because Appellant "threatened to hurt [her] brothers and [her] mother if [she] told anybody." *Id.* at 32. She also claimed that on one occasion, Appellant "put his hands around [her] neck and choked [her]." *Id.*

The abuse continued until Appellant went to prison on unrelated charges in 2008. *Id.* at 47. The victim stated that she did not tell anyone about the abuse when Appellant went to prison because she feared "he was going to get out soon and if he ever found out [she] told someone, he would hurt [her] and [her] brothers or [her] mother." *Id.* at 34. Appellant remained incarcerated until 2013. *Id.* at 47. When he was released, he moved back in with his family, including the victim. *Id.* at 34. The victim testified that shortly after Appellant returned home, she confided in her therapist about his prior abuse because she discovered that Appellant was sending sexual text messages to teenage, female friends of her brother, and the victim "didn't want anybody else to get hurt…." *Id.* at 34-35. The victim's mother, Appellant's one-time paramour, testified that she saw sexual text messages Appellant had sent to the minor females. *Id.* at 58.

Based on this evidence, the jury convicted Appellant of two counts of involuntary deviate sexual intercourse (IDSI) with a child, and one count each of rape of a child, aggravated indecent assault of a child, unlawful contact with a minor, statutory sexual assault, sexual assault, incest, indecent assault of a person under 13 years old, endangering the welfare of a child, and corruption of a minor. On December 15, 2014, the trial court sentenced Appellant to four mandatory minimum terms of 10 to 20 years' imprisonment for each of his two counts of IDSI of a child, as well for his convictions of rape of a child and aggravated indecent assault of a child. The court imposed Appellant's sentences to run consecutively, totaling a term of 40 to 80 years' incarceration.

Appellant filed a timely post-sentence motion which was denied. He then filed a timely notice of appeal, and complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents two issues for our review:

> I. Did the trial court abuse its discretion by preventing trial counsel from conducting a meaningful and pertinent cross-examination when it made numerous erroneous evidentiary rulings throughout the trial, which were not only misapplications of the law and manifestly unreasonable, but were the result of bias, prejudice, ill-will or partiality, thus depriving [Appellant] of his constitutional rights to a full and fair trial?
>
> II. Did the trial court err when it sentenced [Appellant] to 10 to 20 years of incarceration, at four different counts, pursuant to 42 Pa.C.S. § 9718, which has been deemed unconstitutional?

Appellant's Brief at 5 (unnecessary capitalization and emphasis omitted).

In Appellant's first issue, he challenges several evidentiary rulings by the trial court.  As our Supreme Court has directed,

> the decision to admit or exclude evidence is committed to the trial court's sound discretion and its evidentiary rulings will only be reversed upon a showing that it abused that discretion. Such a finding may not be made "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Commonwealth v. Sherwood***, 603 Pa. 92, 112, 982 A.2d 483, 495 (2009). Furthermore, an erroneous ruling by a trial court on an evidentiary issue does not necessitate relief where the error was harmless beyond a reasonable doubt. ***See Commonwealth v. Markman***, 591 Pa. 249, 277, 916 A.2d 586, 603 (2007).

***Commonwealth v. Laird***, 988 A.2d 618, 636 (Pa. 2010).

Appellant challenges several evidentiary rulings by the trial court relating to his cross-examination of the victim.  We will first address his assertion that the court improperly precluded him from questioning the victim about her therapy.  By way of background, on direct examination the Commonwealth asked the victim, "Who did you tell about the sexual abuse you suffered at the hands of [Appellant]?"  The victim replied, "my therapist."  N.T. at 34.  On cross-examination, the defense questioned the victim, as follows:

[Defense Counsel:] You mentioned going to see a therapist.

[The Victim:] Yes.

[Defense Counsel:] I'm going to ask you questions about that. You started seeing a therapist around the time you were in foster care?

[The Victim:] Actually --

[The Commonwealth:] I don't see the relevance.

[The Court:] I'll sustain the objection.

[Defense Counsel:] May we approach?

[The Court:] No. You can ask questions about things that were talked about on direct.

[Defense Counsel:] Very well.

…

[Defense Counsel:] Have you been in therapy?

[The Commonwealth:] Objection.

[The Court:] Sustained.

[Defense Counsel:] You Honor --

[The Court:] The objection is sustained.

N.T. at 40-41.

On appeal, Appellant asserts that because the Commonwealth brought out during direct examination that the victim was in therapy, defense counsel "**must** have been afforded latitude to inquire about [the victim's] therapy." Appellant's Brief at 18 (emphasis in original). Appellant contends that the victim's mentioning she was in therapy "undoubtedly raised the inference that [the victim] was seeing a therapist because she was sexually assaulted by [Appellant]. This is especially true because the therapist was the first person [the victim] confided in about these sexual assaults." *Id.* at 19. Appellant argues that he "had the right to examine [the victim] on any facts tending to refute inferences or deductions arising from matters testified to on direct." *Id.* (internal quotations omitted; quoting *Commonwealth v.*

***Britton***, 380 A.2d 807, 810 (Pa. Super. 1977) ("[T]he right of cross-examination extends beyond the subjects testified to in direct testimony and includes the right to examine on any facts tending to refute 'inferences or deductions' arising from matters testified to on direct.")).

Relatedly, Appellant avers that the trial court improperly precluded him from cross-examining the victim about prior abuse she suffered at the hands of another perpetrator in 2008.[1]  Appellant contends that evidence of this abuse would have "put[] the fact that [the victim] participated in therapy into context – that she participated in therapy for reasons other than the contention that [Appellant] sexually assaulted her as a young girl.

_____

[1] We pause to point out that the trial court incorrectly concluded that the evidence of the victim's 2008 sexual abuse was barred under the Rape Shield Law, 18 Pa.C.S. § 3104.  ***See*** Trial Court Opinion (TCO), 5/20/15, at 5-6.  Generally, that law precludes evidence of an alleged victim's prior sexual conduct.  ***See*** 18 Pa.C.S. § 3104(a).  However, the Supreme Court of Pennsylvania has held that the Rape Shield Law does not prohibit evidence of previous sexual assaults upon a victim because "[t]o be a victim is not 'conduct' of the person victimized." ***Commonwealth v. Johnson***, 638 A.2d 940, 942 (Pa. 1994).  Therefore, evidence of the victim's 2008 sexual abuse at the hands of a third party was not subject to exclusion under the Rape Shield Law, as the trial court incorrectly determined.  Instead, such evidence was admissible if it satisfied the traditional rules of evidence.  ***Id.***; ***see also Commonwealth v. L.N.***, 787 A.2d 1064, 1069 (Pa. Super. 2001); Pa.R.E. 401.  Nevertheless, this Court is permitted to affirm the trial court "on any valid basis, as long as the court came to the correct result…." ***Wilson v. Transport Ins. Co.***, 889 A.2d 563, 577 n.4 (Pa. Super. 2005) (citations omitted).

That testimony would have allowed [Appellant] to combat that inference." *Id.* at 27.

Appellant points to nothing in the record to support his speculative argument that if he had been permitted to question the victim about her therapy, she would have testified that she sought counseling due to the 2008 sexual abuse by a third party. Thus, it appears that Appellant's cross-examination regarding the victim's therapy would have been a mere fishing expedition. Moreover, even if the victim would have testified that she sought therapy due to the 2008 abuse, that testimony would have been minimally relevant, at best, to the truth of her allegations against Appellant. In other words, the fact that the victim may have entered counseling for reasons other than Appellant's abuse would not have been compelling evidence that she falsified her testimony that Appellant abused her. Additionally, it is quite possible the victim would have stated that she entered therapy due to *Appellant's* abuse, which would have hampered his defense more than the jury's ostensibly inferring this fact.

Furthermore, as the Commonwealth asserts, the jury heard testimony by the victim that her family life was difficult. For instance, during defense counsel's cross-examination, the victim testified that she went to foster care from when she was "about three or four" until she was six. N.T. at 37. Thus, the jury could have inferred the victim was in therapy based on her troubled childhood, undercutting Appellant's argument that the *only* obvious inference the jury could have drawn was that the victim was in therapy

because of his abuse. Accordingly, we ascertain no abuse of discretion in the court's limiting Appellant's cross-examination regarding the victim's therapy, or the court's precluding him from presenting evidence of her 2008 abuse by a third party to put her therapy 'in context.'[2]

Appellant next argues that the trial court erred by sustaining the Commonwealth's objection when he asked the victim if she had visited Appellant while he was incarcerated in 2008. **See** N.T. at 46. Appellant contends that evidence that the victim visited him in prison was relevant to refute her testimony that she did not report his abuse once he was

_____

[2] We note that Appellant also argues that the evidence of the victim's 2008 abuse should have been admitted because "[t]estimony that [the victim] had been previously sexually assaulted provided [Appellant] with the only real background for his defense: that [the victim] did not like her father and knew what would happen to someone who was accused of sexually assaulting her." Appellant's Brief at 27. Appellant did not present this argument to the trial court. Instead, when defense counsel first mentioned the victim's prior abuse in 2008 and the Commonwealth objected, Appellant informed the court that that evidence was relevant and admissible for two purposes: (1) to show the victim had "an opportunity to be able to provide a description of what happened to her," and (2) to demonstrate that when the victim was questioned in 2008 after that abuse, "she was asked if [Appellant] had ever done anything to her and she denied it at the time." N.T. at 21. Appellant never sought to admit evidence of the victim's 2008 sexual abuse to show that she "knew what would happen to someone who was accused of sexually assaulting her." Appellant's Brief at 27. Accordingly, Appellant has waived his claim that the court erred by not admitting that evidence for such a purpose. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

incarcerated because she was still afraid of him. ***See*** Appellant's Brief at 21 ("[Defense counsel] attempted to impeach [the victim] by showing that, even though she testified that she was scared of [Appellant], she went to visit him while he was incarcerated."). Presumably, evidence that the victim visited Appellant in prison would have been utilized by the defense to argue that the victim did not promptly report the abuse because it never occurred.

As the Commonwealth points out, however, "in 2008 when [A]ppellant was in jail, [the victim] would have been ten years old; her ability to initiate such visits or to refuse them consequently would have been limited." Commonwealth's Brief at 16. We agree with the Commonwealth that the victim's young age in 2008 made the evidence of her visiting Appellant in jail minimally relevant for the purpose of proving that she was not afraid of Appellant. Additionally, Appellant was able to draw out on cross-examination that the victim knew Appellant "couldn't get to her" for the long period of time that he was incarcerated, yet she still failed to report his abuse to anyone, such as her mother, a teacher, or the police. N.T. at 46-48. Based on this cross-examination, it is apparent that Appellant had the opportunity to cast doubt on the victim's claim that she was too afraid of him to report the abuse when he was incarcerated. The court's decision to limit Appellant from eliciting minimally relevant testimony that the victim visited him in prison in 2008, when she was a young child and likely had no choice in doing so, was not an abuse of discretion warranting a new trial.

Similarly, we ascertain no abuse of discretion in the next evidentiary ruling challenged by Appellant, which involves the following portion of defense counsel's cross-examination of the victim:

[Defense Counsel:] Moving back to 2010, the time your father was in prison, is that right?

[The Victim:] I'm not sure.

[Defense Counsel:] You testified before at the preliminary hearing that in 2010 your father was in prison.

[The Victim:] Yes.

[Defense Counsel:] Do you remember that?

[The Commonwealth:] Your Honor, again, I'm going to object. That is improper questioning. She said she's not sure. He should give her a chance to refresh her recollection.

[The Court:] I'll sustain. You may refresh.

N.T. at 45-46.

Appellant rather confusingly argues that "the questioning here was entirely proper, as it was being used to impeach [the victim], and that she previously testified that she knew that he was in jail. However, the trial court sustained [the Commonwealth's] objection even though [the victim] specifically said that she remembered testifying at the preliminary hearing that [Appellant] was in jail in 2010." Appellant's Brief at 22.

We fail to ascertain any error in the court's ruling. The victim said she was 'not sure' if Appellant was incarcerated in 2010, at which point defense counsel asked her if she remembered testifying at the preliminary hearing that Appellant was in prison in 2010. The victim stated that she did

remember testifying as such. Accordingly, defense counsel was able to point out the discrepancy between her testimony at trial that she was 'not sure' if Appellant was in prison, and her preliminary hearing testimony that he was incarcerated at that time. We fail to see what more the trial court should have permitted defense counsel to ask, and Appellant does not specify as much on appeal. *See* Appellant's Brief at 22 (vaguely stating his defense counsel "should have been allowed to continue his cross-examination").

Appellant's final challenge to the court's evidentiary rulings at trial takes issue with the court's sustaining the Commonwealth's objection when defense counsel asked the victim, "When you were asked at the preliminary hearing, did he, meaning [Appellant], ever kiss any part of your body, could you read what your answer was." N.T. at 53. The victim replied, "I already read it[,]" at which point the Commonwealth objected to defense counsel's question as being "improper." *Id.* The court sustained that objection, which Appellant now claims was error.

We need not delve into Appellant's argument as to why the court's ruling was erroneous because, even if it was, the court permitted Appellant to continue his questioning of the victim, as follows:

> [Defense Counsel:] Just for clarification, … at the preliminary hearing, you denied that [Appellant] licked any part of your body?
>
> [The Victim:] Like --
>
> [The Commonwealth:] Judge, I object as to asked and answered. This is the fifth or sixth time we have been over this.

- 11 -

[The Court:] I'll allow it.

[The Victim:] Like I said, I did not remember at that time, but the more I talked about [the abuse], the more I recall[ed].

N.T. at 53-54. It is apparent from the continuation of defense counsel's cross-examination that he was able to present evidence that at the preliminary hearing, the victim denied that Appellant had kissed or licked any part of her body, which contradicted her trial testimony. Accordingly, even if the court's initial ruling that sustained the Commonwealth's first objection was error, it was corrected by the court's permitting defense counsel's cross-examination to continue, as set forth *supra*.

In sum, none of the purported errors in the court's evidentiary rulings constitute an abuse of discretion; accordingly, Appellant is not entitled to a new trial. Therefore, we affirm his convictions.

However, we are constrained to agree with Appellant that his four mandatory minimum terms of incarceration imposed pursuant to 42 Pa.C.S. § 9718 must be vacated pursuant to this Court's holding that that statute, in its entirety, is unconstitutional. **See Commonwealth v. Wolfe**, 106 A.3d 800 (Pa. Super. 2014). While we acknowledge that our Supreme Court granted the Commonwealth's petition for permission to appeal in **Wolfe**, no opinion by our Supreme Court has been issued as of the date of this decision. In light of **Wolfe**'s invalidating the sentencing statute under which Appellant's sentences were imposed, we vacate Appellant's four mandatory

terms of incarceration and remand for resentencing, without consideration of 42 Pa.C.S. § 9718.[3] **See Commonwealth v. Fennell**, 105 A.3d 13, 15 (Pa. Super. 2014) ("It is also well-established that '[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction.'") (quoting **Commonwealth v. Rivera**, 95 A.3d 913, 915 (Pa. Super. 2014) (citation omitted)).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2016

---

[3] The Commonwealth concedes that we are bound by **Wolfe** and, as such, it "anticipates that [we] will vacate [A]ppellant's judgment of sentence and remand for resentencing." Commonwealth's Brief at 22.